IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELIZABETH LEONE, )
)
        Plaintiff, )
)
  v. )
)   No. 14 C 9583
NAPERVILLE PROFESSIONALS, INC., )
)
        Defendant. )
)

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On December 1, 2014, plaintiff Elizabeth Leone ("Leone") filed a single-count complaint (Dkt. No. 1) alleging that her employer, RE/MAX Professionals Select, discriminated against her based on her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* On February 4, 2015, defendant Naperville Professionals, Inc. ("Naperville Professionals"), a residential real estate company doing business as RE/MAX Professionals Select, filed a motion to dismiss Leone's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 13.) Although Leone's original complaint incorrectly identified the defendant as RE/MAX Professionals Select, the parties agreed to allow Leone to correct her complaint and to treat Naperville Professionals' pending motion as one to dismiss Leone's forthcoming corrected complaint. On February 20, 2015, Leone filed her corrected complaint ("Corrected Complaint") (Dkt. No. 18 ("Compl.")), and Naperville Professionals' motion to dismiss is now ripe for ruling. For the reasons explained below, Naperville Professionals' motion to dismiss (Dkt. No. 13) Leone's Corrected Complaint is denied.

FACTUAL BACKGROUND

From April 25, 2011 until July 27, 2013, Leone worked for Naperville Professionals as an administrative assistant to one of its realtors, Adam Stary ("Stary"). (Compl. ¶ 12.) She worked at Naperville Professionals' office and was supervised by Stary and Ellen Conte-Batinick ("Conte-Batinick"), Naperville Professionals' office manager. (*Id.* ¶¶ 12, 15.) Leone alleges that her work was exemplary, and Naperville Professionals apparently agreed (at some point) since it advertised her positive customer reviews on its company webpage. (*Id.* ¶ 13.)

In September 2012, Leone told Conte-Batinick and Stary that she was pregnant and would need to take three months off of work for the birth of her son, beginning in May 2013. (*Id.* ¶¶ 16, 17.) Stary assured Leone that she would still have her job when she returned from maternity leave. (*Id.* ¶ 17.) In October 2012, well before her scheduled maternity leave, Leone began to suffer from hyperemesis. (*Id.* ¶ 18.) Hyperemesis is a pregnancy-related condition characterized by severe nausea, vomiting, weight loss, and electrolyte disturbance. (*Id.*) Her doctors placed her on bed-rest and Leone missed work from October 2012 through January 7, 2013 as a result. (*Id.*)

On January 1, 2013, Leone signed an "acknowledgment" ("Acknowledgment")[1] stating that her position at Naperville Professionals was "as an unlicensed assistant for Adam Stary . . . under the Naperville Professionals Inc. DBA RE/MAX Professionals Select Real Estate

---

[1] Naperville Professionals attached the Acknowledgment to an affidavit (Dkt. No. 14-2 ("Conte Aff.")) submitted by Jen Conte ("Conte"), who is purportedly one of the owners of Naperville Professionals. Neither Conte's affidavit nor Naperville Professionals' briefs describes the source of the Acknowledgement—they simply call it an "acknowledgment"— but it is clear that the filed Acknowledgment is the last two pages of a larger document, the remainder of which Naperville Professionals' omitted. Given the subject matter of the Acknowledgment, the court infers that the unfiled portions of the source document contain information relevant to Leone's employment status.

Corporation." (Dkt. No. 14-2 at 5.) The Acknowledgment announced a new policy, effective March 1, 2013, that "all unlicensed assistants must have an employment contract on file with RE/MAX Professionals Select." (*Id.*) It is not clear whether the required "employment contract" was to be between agents and their assistants, or assistants and Naperville Professionals. The Acknowledgment further stated that employees' wages could be paid by their agents or through Naperville Professionals' payroll system, but cautioned that employees must participate in Naperville Professionals' payroll system to qualify for "unemployment, worker's compensation or any other benefits provided by Naperville Professionals Inc. to it's [sic] employees." (*Id.*)

After Leone recovered from her hyperemesis and returned to work on January 7, 2013, Stary reduced her share of work on his most lucrative account in favor of his other administrative assistant, Brittany Kaurich ("Kaurich"). (*Id.* ¶¶ 19-20.) Kaurich was not pregnant or a new mother. (*Id.* ¶ 21.) Because part of Leone's compensation took the form of bonus payments for successful closings, the work she lost to Kaurich cost Leone hundreds of dollars each month. (*Id.* ¶ 20.)

At the end of April 2013, Leone left work to give birth to her son. Stary then hired a new, full-time assistant to replace Leone.[2] (*Id.* ¶¶ 22-23.) Stary's new assistant, unlike Leone, was neither pregnant nor a new mother. (*Id.* ¶ 23.) When Leone returned to work on July 27, 2013, Stary called her into his office and terminated her employment. (*Id*) Stary told Leone that he longer needed her services because business had slowed. (*Id.*) He also handed Leone a typed list of purported transgressions dating back to October 2012. (*Id.* ¶ 23.)

On November 8, 2013, Leone filed a charge of discrimination against RE/MAX

---

[2] Leone's Corrected Complaint does not state the name of Stary's new assistant. The court infers that the person was a new hire and not the previously identified Kaurich.

Professionals Select (again using the wrong corporate name) with the Illinois Department of Human Rights ("IDHR") and the U.S. Equal Employment Opportunity Commission ("EEOC"). (Compl. Ex. A.) The IDHR dismissed Leone's charge on April 30, 2014, (Dkt. No. 20 Ex. A), and the EEOC sent Leone a right to sue notice on September 4, 2014 (Compl. Ex. B). Leone filed this lawsuit on December 1, 2014.

## LEGAL STANDARDS

I.  Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. "The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion." *Bolden* v. *Wells Fargo Bank, N.A.,* 2014 WL 6461690, at *2 (N.D. Ill. Nov. 18, 2014) (citing *Apex Digital, Inc.* v. *Sears, Roebuck & Co.,* 572 F.3d 440, 443–44 (7th Cir. 2009)). "If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiffs favor." *Bolden,* 2014 WL 6461690, at *2 (citing *United Phosphorus, Ltd.* v. *Angus Chem. Co.,* 322 F.3d 942, 946 (7th Cir. 2003)). A factual challenge to the court's subject matter jurisdiction, on the other hand, is based on the assertion that "the complaint is formally sufficient but ... there is *in fact* no subject matter jurisdiction." *United Phosphorus,* 322 F.3d at 946 (emphasis in original). When considering a factual challenge to the court's jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers* v. *Astrue,* 536 F.3d 651, 656–57 (7th Cir. 2008) (quoting *St. John's United Church of Christ* v. *City of Chicago,* 502 F.3d 616, 625 (7th Cir. 2007)). "Where jurisdiction is in question, the party

asserting a right to a federal forum has the burden of proof, regardless of who raised the jurisdictional challenge." *Craig* v. *Ontario Corp.,* 543 F.3d 872, 876 (7th Cir. 2008).

II.   Rule 12(b)(6)

Under the Federal Rules of Civil Procedure, a complaint's allegations need only to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley* v. *Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. A complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole* v. *Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice* v. *Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903.

## ANALYSIS

Naperville Professionals seeks to dismiss Leone's Corrected Complaint for lack of subject matter jurisdiction because it never had an employment relationship with Leone, and for failure to state a claim because Naperville Professionals is not an employer amenable to suit

under Title VII.[3] (Dkt. No. 14 ("Def.'s Mem.") at 1.)

I. Subject Matter Jurisdiction

Naperville Professionals first argues that Leone cannot succeed on her Title VII claim because she was not Naperville Professionals' employee, which if true, would deprive this court of subject matter jurisdiction. Title VII makes it unlawful for "an employer . . . to discriminate against any individual with respect to . . . sex," 42 U.S.C. § 2000e-2(a)(1), or in Leone's case, pregnancy. Congress extended Title VII protection to pregnant women through the Pregnancy Discrimination Act of 1978 ("PDA"), which prohibits employment discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). As with all Title VII claims, the existence of an employer-employee relationship is a predicate for liability. Title VII does not protect independent contractors or, in this case, another employer's employees. *Knight* v. *United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (7th Cir. 1991).

Who constitutes an employee for purposes of Title VII liability is a recurring question and a source of frustration for litigants and courts alike, particularly when a plaintiff may have more than one employer. *See Tamayo* v. *Blagojevich*, 526 F.3d 1074, 1088 (7th Cir. 2008) (noting a plaintiff may have more than one employer for the purpose of Title VII liability). Although Title VII defines "employee" as "an individual employed by an employer," 42 U.S.C. § 2000e(f), that language "is completely circular and explains nothing." *Nationwide Mut. Ins. Co.* v. *Darden*, 503 U.S. 318, 323 (1992) (criticizing same definition of "employee" in ERISA statute).

---

[3] Naperville Professionals asserts its latter argument as a basis for dismissal under both 12(b)(1) and 12(b)(6). As Leone notes, however, Title VII's employee-numerosity requirement relates to the adequacy of the claim; it "does not circumscribe federal-court subject-matter jurisdiction." *Arbaugh* v. *Y&H Corp.*, 546 U.S. 500, 504 (2006).

To determine whether an individual is an employee within the meaning of Title VII, courts in the Seventh Circuit have typically applied one of two tests. The first test, initially set forth in *Knight*, instructs district courts to balance five factors relevant to an employer-employee relationship:

> "(1) [T]he extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations."

*Knight*, 950 F.2d at 380. The second test, often described as the "economic realities" test, instructs district courts to evaluate "the amount of the control a putative Title VII defendant exerts over the plaintiff's employment," with a focus on the "economic realities" of the relationship. *Kerr* v. *WGN Cont'l Broad. Co.*, 229 F. Supp. 2d 880, 886 (N.D. Ill. 2002) (Norgle, J.) (citing *EEOC* v. *Illinois*, 69 F.3d 169, 171-72 (7th Cir. 1995)).

In *Love* v. *JP Cullen & Sons, Inc.*, 779 F.3d 697 (7th Cir. 2015), the Seventh Circuit clarified that the two tests are not distinct; the court in *Knight* merely "conceptualized the five factors as an operationalization of the 'economic realities' test." *Love*, 779 F.3d at 702. In other words, the *Knight* factors provide a structure to evaluate the economic and control considerations of the "economic realities" analysis. After resolving the mistaken distinction between the two tests, the Seventh Circuit ultimately applied the *Knight* factors to reach their decision in *Love*. This court will therefore apply the "operationalized" version of the economic realities test—*i.e.*, the *Knight* factors—in evaluating whether Leone was Naperville Professionals' employee.

Although the court has limited information at this stage of the case, Leone's and Naperville Professionals' filings paint a considerably different picture concerning Leone's work for Naperville Professionals. Leone contends she was supervised by Naperville Professionals'

office manager, Conte-Batinick, and that she was bound to follow Naperville Professionals' policies and procedures. The Acknowledgment filed by Naperville Professionals confirms that Leone was bound to follow Naperville Professionals' policies and that she was subject to termination by Naperville Professionals if she failed to do so. (Conte Aff. at 5-6.) The Acknowledgment also suggests that Leone may have had an employment contract with Naperville Professionals and likely received her paycheck through Naperville Professionals' payroll system. (*Id.* at 5.) And by participating in Naperville Professionals' payroll system, Leone qualified for the "benefits provided by Naperville Professionals Inc. to *it's* [sic] *employees.*" (Conte. Aff. at 5) (emphasis added).

Naperville Professionals claims that Stary, an independent contractor himself, was Leone's sole employer. Naperville Professionals disputes Leone's claim that she was supervised by Conte-Batinick, (Def.'s Mem. at 6), and claims instead that Stary instructed Leone, handled her assignments, and set her schedule (Conte Aff. at 1-2). He also determined Leone's rate of pay and prepaid her salary to Naperville Professionals. (*Id.* at 2.) Naperville Professionals further claims that it had no "role or right to be involved in [Leone's] discipline or termination," (Conte. Aff. at 2), but this last assertion is undercut by the Acknowledgment attached to Jen Conte's affidavit. The Acknowledgment states that Naperville Professionals could have terminated Leone if she failed to follow its guidelines in a professional manner. (Conte Aff. at 6.)

As the Seventh Circuit noted in *Knight*, "the 'economic realities' test . . . involves the application of the general principles of agency to the facts." *Knight*, 950 F.2d at 378. The discrepancies set forth above are only some of the disputed facts here, but they are sufficient to illustrate why the court cannot find that Leone was not Naperville Professionals' employee, at least at this stage of the litigation. Indeed, Naperville Professionals has not cited a single case

resolving the existence of an employer-employee relationship at the motion to dismiss stage. Leone alleges that she worked at Naperville Professionals' physical office, received her pay and benefits from Naperville Professionals, and was supervised by Naperville Professionals' office manager. Under *Knight*, Leone's allegations are sufficient to sustain a Title VII claim against Naperville Professionals. Despite Naperville Professionals' assertion to the contrary, Leone is not required to supply evidence to rebut the statements contained in Conte's affidavit; she is entitled to rely on her pleadings until the summary judgment phase of litigation. *See, e.g.*, *Turner v. Mony Life Ins. Co.*, No. 04 C 3065, 2004 WL 2381912, at *3-4 (N.D. Ill. Oct. 21, 2004) (Der-Yeghiayan, J.) (declining to find no employment relationship at motion to dismiss phase based solely on employer's affidavit). The court is not, of course, finding that Leone is Naperville Professionals' employee for the purpose of Title VII liability; merely that the allegations in the presented record of this case provide sufficient factual support for an inference that such a determination is premature at this stage of the litigation.

II.     Failure to State a Claim

Naperville Professionals next argues that it is not an employer amenable to suit under Title VII because it employed only 9 people in 2012 and 2013. (Conte Aff. ¶ 26.) Title VII applies only to employers who employ 15 or more employees for at least twenty weeks in the relevant calendar year. 42 U.S.C. § 2000e(b). As Leone points out in her response, however, Naperville Professionals' website lists 60 real estate brokers working for the company. (Dkt. No. 19 at 7.) Many of these 60 real estate brokers employ assistants who enjoy the same employment relationship with Naperville Professionals as Leone. Naperville Professionals' numerosity argument therefore requires the court to find that none of the administrative assistants working at Naperville Professionals are employees for the purpose of Title VII liability. The court declines

to make such a finding for the same reasons discussed in the previous section regarding Leone's individual employment status.

## CONCLUSION

For the reasons explained above, defendant Naperville Professionals' "motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6)" [13] is denied. Naperville Professionals shall file its answer to plaintiff Elizabeth Leone's Correct Complaint by 4/30/2015. The court requests that counsel for the parties meet and confer pursuant to Rule 26(f). The court further requests that counsel file a joint Form 52 by 5/14/2015. The case is set for a report on status and entry of a scheduling order on 5/19/2015 at 9:00 a.m. The parties are encouraged to discuss settlement.

ENTER:

_____
JAMES F. HOLDERMAN
District Judge, United States District Court

Date: April 17, 2015